## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BARBARA HANKINSON, et al.** | **:** | |
| **Plaintiffs**, | **:** | **CIVIL ACTION** |
| | **:** | |
| **v.** | **:** | |
| | **:** | |
| **U.S. DEPARTMENT OF HOUSING** | **:** | |
| **AND URBAN DEVELOPMENT, et al.** | **:** | **No. 10-193** |
| **Defendants.** | **:** | |

## MEMORANDUM

**Schiller, J.**                                                                                            **August 24, 2010**

Plaintiffs bring this derivative action on behalf of Lipscomb Square Cooperative ("Lipscomb Square") against the United States Department of Housing and Urban Development ("HUD"), Multifamily Management of Philadelphia, LLC ("MMP"), Herbert Brunson Jr., Elizabeth Williams, and Vaqueca Henderson based on Defendants' oversight and management of Lipscomb Square. Plaintiffs claim that HUD, which regulates Lipscomb Square and insures its mortgage, acted improperly by: (1) ordering Lipscomb Square to hold a new election for its board of directors and accepting the results of that election as valid; (2) accepting and retaining excess income funds from Lipscomb Square; and (3) refusing to sanction MMP for its poor management of Lipscomb Square or terminate MMP's contract with Lipscomb Square. Currently before the Court is HUD's motion to dismiss the Second Amended Complaint or in the alternative, for summary judgment. For the reasons that follow, HUD's motion is granted in part and denied in part.

## I.    BACKGROUND

Plaintiffs are individual shareholders and residents of Lipscomb Square. (Second Am. Compl. ¶ 7.) Lipscomb Square is a non-profit housing cooperative which holds title to the property located at 625 South 12th Street, Philadelphia, Pennsylvania. (*Id.* ¶ 6.) The property is held subject to a mortgage, which is insured by HUD. (*Id.* ¶ 13.) HUD regulates Lipscomb Square pursuant to a regulatory agreement. (*Id.* Ex. A [Regulatory Agreement] at 1.) MMP is the managing agent of Lipscomb Square and is responsible for managing the operation of the cooperative. (*Id.* ¶¶ 18, 37; Ex. B [Mgt. Contract].)

Lipscomb Square is run by a five-person board of directors. (*Id.* ¶¶ 15, 32.) Lipscomb Square's by-laws provide for staggered elections of such directors, whereby each year a minimum of one and a maximum of three spots on the board may be up for election. (*Id.* ¶ 33; Compl. Ex. C [By-Laws].) Prior to December 14, 2009, the five board members were Barbara Hankinson, Herbert Brunson, Jamila Hankinson, Dimitri Ferrel, and Robert Brown. (*Id.* ¶¶ 20, 21.) On November 25, 2009, HUD's project manager for Lipscomb Square, Rita DeMarco, sent a letter to the board demanding and directing it to call a special meeting of the general membership on or before December 14, 2009 for the purpose of electing an entirely new board of directors. (*Id.* ¶ 76.) An election was subsequently held on December 14, 2009, and on December 18, 2009 DeMarco indicated to Lipscomb Square's counsel that HUD accepted the election results and recognized Brunson as the new board president, as well as Williams and Henderson as new Lipscomb Square board members. (*Id.* ¶¶ 19, 80.)

HUD also accepted over $40,000 in excess income[1] payments made by MMP as managing agent for Lipscomb Square, and retained such payments over Lipscomb Square's objections. (Second Am. Compl. ¶¶ 50, 82, 94, 104.)  Plaintiffs allege that HUD had previously acknowledged that such amounts were not due, and had waived its claim to any such amounts.  (*Id.* ¶¶ 50, 82.)

Lipscomb Square also claims that HUD failed to sanction MMP or to terminate the management contract between MMP and Lipscomb Square, despite MMP's multiple alleged breaches of that contract.  (*Id.* ¶¶ 79, 93, 103.)  MMP's alleged breaches stemmed from problems with maintenance and repair; failure to provide accurate financial information; failure to find new members for the cooperative; failure to collect accounts receivable; and failure to communicate with the board.  (*Id.* ¶¶ 42, 44, 46, 53-57, 58.)  Lipscomb Square attempted to terminate its contract with MMP, however, HUD informed Lipscomb Square that under its regulatory agreement with HUD, MMP could not be terminated until HUD approved a replacement management agent.  (*Id.* ¶¶ 45, 59.)

## II.    STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Bd. of Trs. of Bricklayers and Allied Craftsman Local 6 of N.J. Welfare Fund v. Wettlin Assocs.*, 237 F.3d 270, 272 (3d Cir. 2001).  A court should accept the complaint's allegations as true, read those allegations in the light most favorable to the plaintiff, and determine whether a reasonable

---

[1] Excess income is defined as cash collected as rent from residents by the mortgagor in excess of HUD-approved basic rent.  24 C.F.R. § 236.60(a).

reading indicates that relief may be warranted. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the federal rules impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Simply reciting the elements will not suffice. *Id*. (concluding that pleading that offers labels and conclusions without further factual enhancement will not survive motion to dismiss); *see also Phillips*, 515 F.3d at 231.

The Third Circuit Court of Appeals has recently directed district courts to conduct a two-part analysis when faced with a 12(b)(6) motion. First, the legal elements and factual allegations of the claim should be separated, with the well-pleaded facts accepted as true but the legal conclusions disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must then make a common sense determination of whether the facts alleged in the complaint are sufficient to show a plausible claim for relief. *Id*. at 211. If the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged—but has failed

to show—that the pleader is entitled to relief. *Id.*

When faced with a motion to dismiss for failure to state a claim, courts may consider the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). A district court may also consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

### A. Takings Claim

Plaintiffs claim that "HUD has effected a taking of their constitutionally protected property interest in the Cooperative indirectly without the benefit of a formal eminent domain proceeding." (Second Am. Compl. ¶ 101.) Plaintiffs assert that HUD came to agreements with its fellow defendants to: (1) withhold payment of Lipscomb Square's taxes; (2) pay HUD approximately $40,000 in excess income; and (3) potentially convert the property to apartments. (*Id.* ¶ 96.)

The takings clause of the Fifth Amendment provides: "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. Takings claims generally fall into two categories: physical and regulatory. *See Yee v. City of Escondito*, 503 U.S. 519, 522-23 (1982). A physical taking consists of an occupation of all or part of an individual's property. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 421, 426 (1982). A regulatory taking occurs when "a regulatory or administrative action places such burdens on the ownership of property that essential elements of such ownership must be viewed as having been taken." *Hendler v. United*

*States*, 36 Fed. Cl. 574, 585 (1996). The purpose of the takings clause is to "bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123 (1978) (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)). A per se regulatory taking occurs when an agency action deprives an owner of all economically beneficial uses of his or her property. *See Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992). If all economically beneficial use is not removed from the property, courts look to see if agency action "goes too far." *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). In doing so, courts conduct an "essentially ad hoc, factual inquir[y]" focused on three factors: (1) the economic impact of the regulation on the claimant; (2) the degree of interference with the reasonable, investment-backed expectations of the property owner; and (3) the character of the government action. *Penn Cent. Transp. Co.*, 438 U.S. at 124-28; *see also Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 535 U.S. 302, 325-28 (2002); *Palazzolo v. Rhode Island,* 533 U.S. 606, 634 (2001) (O'Connor, J., concurring). Analyzing temporary regulatory takings claims includes consideration of a fourth factor: the duration of the restriction. *See Tahoe-Sierra,* 535 U.S. at 342. No factor is solely determinative, rather, all of the factors are to be weighed in a balance that takes into account all of the circumstances. *Palazzolo,* 533 U.S. at 635-36 (O'Connor, J., concurring).

Plaintiffs have made no allegation that a physical taking has occurred, thus the Court turns to whether Plaintiffs have stated a claim of a regulatory taking. It is clear that HUD has not deprived Plaintiffs of all economically beneficial uses of their property since they still live in the cooperative, the cooperative operates in substantially the same capacity as it has historically, and HUD still insures the mortgage on the property. Therefore, the Court's analysis focuses on whether HUD's

actions "go[] too far," given the relevant factors enumerated above. *See Mahon*, 260 U.S. at 415.

Plaintiffs have alleged no facts that could support a takings claim in any of the three iterations of their complaint. Plaintiffs simply fail to allege any fact indicating that HUD has taken any of their property. They retain the same full use and enjoyment of their property as they did before any alleged HUD misdeed. Plaintiffs further fail to allege any damages to their property or their rights in that property from any alleged taking. Any speculation about the cooperative possibly being converted into apartments at some unidentified point in the future is a bald assertion that the Court can disregard, and such speculation certainly does not present any cognizable injury to Plaintiffs today.

### B.    APA Claims

Under the Administrative Procedures Act ("APA"), a court may review final agency action, and set aside such action if it finds it to be arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, or without observance of procedure required by law. 5 U.S.C. §§ 704; 706(2)(A), (D). Plaintiffs present claims for relief under the APA which are plausible on their face. Plaintiffs claim that HUD acted arbitrarily and capriciously when it: (1) ordered Lipscomb Square to hold a new election for its board of directors and accepted the results of that election as valid; (2) accepted and retained excess income funds from Lipscomb Square; and (3) refused to sanction MMP for poor management of Lipscomb Square or terminate MMP's contract with Lipscomb Square. Accepting as true all well-pleaded allegations and drawing all reasonable inferences in favor of Plaintiffs, the Court finds that Plaintiffs have stated a claim under the APA. Having decided that dismissal of this claim is inappropriate at this time, the Court will not embark on a summary judgment analysis at this early stage of the proceedings. The issue may be explored after the parties

have had the benefit of discovery.

**IV.     CONCLUSION**

Plaintiffs' takings claim is dismissed.  The remainder of Plaintiffs' case shall proceed.   An

appropriate Order will be entered on the docket consistent with this Memorandum.